Thank you, Your Honor. Your Honor, good morning. May it please the Court, my name is Mark Ebert, and I'm here representing the appellant, Mr. Mabassa Boyd. Your Honor, there are three issues in this case, but two of them involve the same very important question, and that question is, in deciding or in ruling on a federal constitutional claim arising under decisions of the United States Supreme Court, are the state courts free to ignore the standards and the procedures that the federal courts employ in deciding whether a defendant's federal constitutional rights were violated? Well, counsel, the California court said that its decision would be the same even using federal precedent, or a phrase of that, I don't have it verbatim, but essentially that phrase. Why shouldn't we take the court at its word that it considered both state standards and federal standards and decided that the result should be the same, analyzing it each way? Well, Judge White, the district court here said, and I agree with him, that that statement, which was one sentence, and referred not to a case which decided the standard under which the issue should be decided, but referred instead to the fact that merely disqualifying the only African-American on the jury did not in and of itself raise an issue of under Batson, that that didn't clearly establish whether or not they were ruling under the right standard or not. Basically, the district court said that that wasn't adequate to determine whether the right standard was being applied, and I think that the district court was right in saying that. So assume they applied the – assume we applied the Batson standard. What is the standard that affects whether or not he should have had access to the entire transcript? Okay. The U.S. Supreme Court in Batson directed trial courts, all trial courts, state and federal, to consider all of the relevant circumstances in ruling on a federal claim of racial discrimination in jury selection. And they specifically included patterns of strikes against jurors of other jurors of the same race and questions and statements that prosecutors directed to other members of the jury veneer. That is part of what we now call comparative juror analysis, a term that wasn't, of course, around when Batson itself was decided. In addition, both the state and the district court agreed below that the Ninth Circuit has embraced comparative juror analysis in at least five Ninth Circuit cases, which are cited and discussed on page 33 of my opening brief. And the Ninth Circuit case decided most recently before Mr. Boyd's trial was Turner v. Marshall, which said, quote, a comparative analysis of jurors struck and those remaining is a well-established tool for exploring the possibility that facially race-neutral reasons are a pretext for discrimination, end quote. And the Supreme Court, as recently as 2003, has reaffirmed the use of comparative juror analysis in analyzing Batson claims. So the point is that we've got five cases, including the one decided most recently before the trial here, all of which say you use comparative juror analysis in ruling on federal constitutional Batson claims. The only case that the district court cited that suggested that that might not be the case is the one that Judge Kaczynski indicated that he didn't know whether or not this would apply in state court. But every U.S. Supreme Court case and every Ninth Circuit case decided before and after that, including right before the trial of this case, has applied comparative juror analysis. And even Judge Kaczynski said that when you get to the Ninth Circuit, when you get to the federal courts, it's the federal standard that would apply. That's in footnote two of Burks v. Bork. But as I understand it, California Supreme Court has explicitly rejected that methodology of proof. That's correct. And your argument is that that California ruling is contrary to clearly established Supreme Court law? That is exactly what I'm saying. Now, if they're ruling on a Wheeler challenge under state constitutional law, they can do what they want under state law. But when a federal Batson claim is raised and the issue is whether Batson has been violated, then I think federal law should apply. I think that all courts, state and federal, should apply federal law the same way in ruling on federal constitutional questions, because if you don't, what you end up with is the defendant – defendants have different levels of protection for their federal constitutional rights depending on what state and on what court they're being tried in. Mr. Boyd's counsel on direct appeal had a right under federal law to conduct comparative juror analysis in support of his federal constitutional claim under Batson. And both the state courts and the district court below should have allowed him to make that argument and show them his evidence rather than foreclosing it at the outset by preventing him from having access to the evidence he needed to make the argument. Now, there's a second level to this question, which is whether a defendant is even required to provide any specific showing of need to obtain a free transcript of his trial. And if so, a desire to conduct comparative juror analysis under Batson should be enough. But under Britt v. North Carolina and five other Supreme Court cases I cited in my brief, I don't believe that's even required. In Britt, the Supreme Court held that the equal protection and due process clauses required states to provide indigent prisoners with a free transcript of prior proceedings when needed for an effective defense or appeal. And they do consider two factors, one of which, whether there are alternative ways of getting the same information, is not at issue in this case.  However, however, the Supreme Court has indicated that the appellant cannot be required to specify how the transcript is – might be useful to him in any way specific to that particular case. And that's because the Supreme Court has already determined in six different cases that effective appellate and habeas review is impossible without a complete transcript. Well, is that true here? Are you – I need to understand your argument. Are you saying that a Batson claim cannot be analyzed without a transcript of the entire trial, not just the part pertaining to jury selection? I'm saying, first of all, if you need a – if you need a reason, the fact that you can make a Batson. That's a yes or no question. Do you need an entire trial transcript to have an analysis of the Batson claim or only the transcript? The entire voir dire transcript. Oh, so – all right. Because comparative juror analysis can't be done unless you have the entire voir dire. But, again, you know, could you think of a case in which a transcript would have no value at all? Yeah, maybe you could. Maybe there would be a case where there's a plea agreement, a guilty plea, and in the plea agreement they say, we'll reserve one issue for appeal, and that is whether the federal sentencing guidelines are unconstitutional on their face under Blakely. Okay? There could be cases like that. But this isn't that case. And the presumption that the Supreme Court has established is that you presume that a complete trial transcript is necessary for an appeal. Well, there is some discussion about the nature of the issues and also alternative means of obtaining the relevant information. Now, you had at least one recipient witness to the jury process, and that was your client. And then the other recipient witness was the lawyer. Does your client have any burden to come forward to show that neither is an adequate alternative source or at least that they could pinpoint where they were at in terms of jury discrimination? My reading of the cases talking about alternatives was that they were discussing things like readbacks during trial or whether they could get a transcript from somebody else, say a co-defendant who had it and had the means. I'm not aware of any cases which suggest there's an adequate alternative for a co-defendant. Mr. Boyd is a person with poor education and serious mental health issues. I don't know that that would have been adequate in his case. What about the trial lawyer? I think the best evidence and probably the evidence that the court of appeals would want to see is the transcript rather than what the defense lawyer says. I was going really more to the showing that needed to be made. There's also the question, for example, the record is silent as to what happened to the other African-American jurors in the African pool. And certainly that was something within the knowledge of the defendant and his counsel to say not only were these people excluded, but there were no African- Americans on my jury because for all that appears here, there were two on his ultimate jury.  I mean, he may have made a great record at trial. But he knows. He actually knows in his head whether they were on the jury or not. Well, first of all, the appellate lawyer was different than the trial lawyer and different than me also. I don't know what happened to the trial lawyer. I don't know whether he was available, whether he was alive. I don't know the answer to that. Anyway, I have four minutes. I'm going to say that for a double. Thank you. If anyone just, if anyone knows what that buzzing noise is, if it's a phone or something, if you have something that's on and you can turn it off, that would be helpful. And if it's not, it's just one of those great mysteries of life. You may proceed. Good morning, Your Honor. May it please the Court, Gwen Pruden, Deputy Attorney General for the State of the Board. What Mr. Boyd is asking this Court to do is to erroneously apply, first of all, the AEDPA standard. And he does this in several ways. In his brief, he cites to various portions of the Williams v. Taylor opinion. Unfortunately, he cites to Justice Stevens' opinion regarding Part 2 rather than to Justice O'Connor's, which is actually the majority opinion. And he does this on several occasions. And by doing so, he's encouraging this Court to extend federal law under the guise of saying that the Supreme Court says it's okay to do this under the AEDPA. And I think that the Supreme Court is very clear about how this, how federal law under the AEDPA, in its most recent opinion of Yarborough v. Alvarado, where they said that Section 2254d.1 would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law. And that's exactly what Mr. Boyd is asking this Court to do. There is simply no part of the Batson opinion or any of its progeny that say comparative juror analysis is mandated under Batson. It may be a very effective tool. California does not reject comparative juror analysis, as my opponent has indicated to this Court. They simply say that comparative juror analysis may not be done in the first instance on appellate review. But the process of comparative juror analysis can certainly be done at the trial court level and is routinely done at the trial court level in both establishing or attempting to establish a Batson claim as well as by the trial judge. Can it be done at the appellate level if you have enough money to get a transcript? I'm sorry, sir? I said if you have enough money for a transcript, can it be done at the appellate level? No, the California courts will not allow a comparative juror analysis to be done at the appellate level. I believe that's the answer to Your Honor's question. I mean, the facts may be there, but they will not entertain it, is my understanding of that. Is it a matter of sort of preservation of an issue? Is that the theory behind it, that if it wasn't raised and discussed at the trial court, it's too late? There are policy reasons that the California courts have in terms of they don't feel the cold appellate record is adequate enough to do the complete comparative juror analysis necessarily. They rely on the trial courts to do that. And how does that work sequentially in a jury empanelment? As in this case, it came midpoint through the voir dire was what on the third strike. How would you do a comparative analysis in the midst of a jury selection? You would compare what had happened up until that point. And that's the whole problem, I think, with Mr. Boyd's case is his counsel, if in fact there was any chance of showing a Batson violation, sort of jumped the gun. He didn't have a case. This was the first African-American juror that had been struck peremptorily. The first African-American juror in this case was struck for a cause, for failing to disclose a record of priors. Now I'm a little confused. You're saying that as a matter of practice, that it's inappropriate to make a Batson challenge at the time of the strike? No, Your Honor. No. What I'm saying is that based on the facts, as we understand them from the record before us, there simply wasn't any reason for counsel at that point in time to make a Batson challenge, and counsel certainly didn't support the Batson challenge. The only reasons he proffered to the trial court were, first of all, that Shirley Brown was a black woman and that there were two other blacks remaining in the panel who had yet to be questioned, and the only other potential black juror was properly dismissed for cause because he failed to disclose priors. And as far as counsel could see, when I say counsel, I mean defense counsel, he couldn't discern any tangible reasons from Ms. Brown's voir dire responses why she had been removed. He made no effort to show that the prosecutor had questioned other jurors of other races differently or somehow that his questioning of Ms. Brown was perhaps more harsh or more critical or vindictive in some manner. And basically, he failed to make a prima facie showing. So just so I understand how California procedure would have worked in this case properly, he could have because he believed at the time in the we only as the courts on appeal in California, we only have the cold records. So whatever the dynamic that was going on, defense counsel thought that there was a legitimate Batson challenge or Wheeler challenge. So he makes it. Okay. So it's ruled that he has not made his prima facie case. So they go through the rest of the voir dire and the jury and panel has no African-Americans on it. He can then, under California law, he can renew his Batson or his Wheeler challenge? Yes, Your Honor. And then at that point, he can argue to the judge all the comparative analysis? He could have argued. And as the court asked my opponent, you know, what happened to the other jurors? We don't know. However, if one looks at the clerk's transcript in this particular case, there's only a showing of one Wheeler motion. That's a motion being made throughout the entire trial. And it falls on the same date that Ms. Brown is. And so I think that it's more than safe to assume that the reference in the clerk's transcript, the minutes of the court, is strictly to the challenge that was raised regarding Ms. Brown. Counsel never revisited the issue. And certainly, he could have done so, particularly if the prosecution was discriminatorily, you know, exercising its challenges. I'm sure that there would have been more proof. But the bottom line is, the trial court, the California trial court, the Court of Appeal, said that Petitioner did not make his prime of face showing. And the district court judge, who undertook a de novo review, which we feel was not necessary in this case, based on the reference to the Vasquez-Lopez case by the Vasquez-Lopez case was decided.  inference standard of Batson in that case where they found that the case was particularly relevant to the situation at hand because the circumstances of the case that Boyd did not establish a prime of facial case of group discrimination even under federal precedent. And the Vasquez-Lopez case was decided. And if one reads that opinion, it's obvious that they're using the reasonable inference standard of Batson in that case where they found that it was factually similar to this case where the first juror challenged or one juror perennially challenged of a particular racial group did not constitute a Batson violation. However, when Judge White did his de novo review, he came to the same conclusion that the state courts did and that also as the court of appeal found in its opinion there were reasons that would have justified the prosecutor peremptorily challenging. Ms. Brown. We have a Ninth Circuit poltergeist today. And those were that in responding to questions about the possibility of her losing time on the job, the prosecutor felt that she was somehow reticent in answering that question. And also that he felt that she was possibly holding back information and her true feelings about her personal experience with the criminal justice system and how she might respond to one of the key prosecution witnesses. And that came up in the form of questioning about how she might feel about a family member for a criminal violation. And that's exactly the situation we had here where Mr. Boyd's grandmother turned him in for the weapons violation. With regard to the transcript, the law, established law, is that there must be a there is a need for that transcript for an effective defense or appeal. And again, as recently as June of this year, this court in Kennedy v. Lockyer reaffirmed that a direct appeal and a retrial or a resentencing procedure may be treated differently. Although that was in the context of a second or successive trial and it was saying that whatever Kennedy may be, we may be saying about that circumstance, an appeal could be different. In this case, the appeal issue is, as we've been discussing, what was the nature of the voir dire? What happened? That's the narrow issue. So why wouldn't a transcript? Why do you have to cite the clerk's transcript and infer that there was only one Wheeler motion and there was no follow-up? Isn't that the point that the defense is trying to get at? The reason, Your Honor, is that, again, there was no record made, no showing that there were any other challenges. We don't know that. Well, we do know that. We only know that in the time that he exercised the challenge as to the one juror, he didn't. But beyond that, how do we know that there wasn't any other commentary? We know that there was no other renewal of the Wheeler motion from the minutes of the court. And we have to presume that this court record is accurate, Your Honor. I mean, we have no factual basis. Petitioner has not provided anything in the record to show that there's something deficient about this court. Well, how could he? He doesn't have the record. I mean, this is an indigent defendant without access to the transcript of what transpired during that voir dire. Well, he did get the voir dire of Ms. Brown. Of the juror, right. But you're arguing it was premature and he never raised the issue again. I don't know whether he did or not. Well, Your Honor, all I can refer the court to is the clerk's transcript which shows that there was no other renewal. Exactly. You just made my point. All you can refer us to on this record is the clerk's transcript. That's correct, Your Honor. And you're content with that. That's what you do. Yes, I am, Your Honor. And I submit that this court should be content with it, too. Whose burden is it to demonstrate either a Batson violation in general or the necessity of further parts of a transcript? The burden under Batson initially rests with the, in this case it would be the defendant, to make the initial prima facie showing. Once the prima facie showing is made, the burden then shifts to the prosecution under And then the court steps back and looks at all the relevant facts and circumstances before it at the time that the motion is being considered and says yes or no, there's either been a showing of purposeful discrimination or no, there has not. If comparative analysis had taken place at the trial, would that entitle you to the transcript of the release of the voir dire? To those portions that were cited to by counsel in trying to make a comparative analysis, that's my understanding, yes, he would have been entitled to those particular portions. So all he would have had to say, in your view, is I think my lawyer did some more of this stuff later on, on day four, or when they talked to, you know, Juror Smith, and that would have been, in my opinion, I think it would be, Your Honor, I'm not the state court, naturally, but it would depend on what kind of showing is made. But, again, there's nothing indicating, and Mr. Boyd has never said that counsel pursued this matter further. In all the requests that were made to the court of appeal, it's simply, we need this so we can do comparative juror analysis in the first instance. That was all that was ever put before the court of appeal when this motion was made on at least three, if not four, separate occasions. It was the initial motion trying to get the entire juror voir dire transcript, and then it was renewed, I believe, two or three additional times. And in every instance, it was turned down. And so I would submit that because state law precludes comparative juror analysis to be done in the first instance on appellate review, that the entire juror voir dire transcript is irrelevant and contains extraneous material. And, therefore, under the existing Supreme Court law as it is today, that he's not entitled to that transcript. Thank you, counsel. Your time has expired, and I think we understand. We simply ask that the court affirm the district court's decision. Thank you. You have some rebuttal time, right? Yes. Thank you, Your Honor. Mr. Pruden began by saying that you can't extend federal law to state courts unless it's clearly established by the U.S. Supreme Court. I believe that under Batson and Miller v. Cockrell and under all of the nine circuit cases I've cited, it is clearly established federal law that comparative juror analysis is the way federal courts decide whether there has been a violation of Batson. Now, Mr. Pruden says under state law that has to be done at the trial court level and can't be done at the appellate court level. Well, first of all, that may be state law, but it's not federal law. And what we have here is a federal constitutional claim under Batson. In your view, what is the best case for your proposition that under federal constitutional law, as stated by the United States Supreme Court, comparative juror analysis must be allowed to occur for the first time at the appellate level? Is there a case that so holds or clearly so implies? I think that Batson makes clear by the examples that it gives that comparative juror analysis is among the ways that you decide a Batson claim. That isn't the question. It can be among the ways and yet not be required of a state court. In other words, if there are five ways to skim a can and a state court says we only have three of those ways in Nebraska, that may be enough under the federal constitution. So that's why I asked the question the way I asked it. Sure, I understand. But in fact, Batson starts out by saying that in deciding whether the defendant, quote, has made the requisite showing the trial court should consider all relevant circumstances. And then it gives two. And it says these are not meant to be everything you can consider. All relevant circumstances means all relevant circumstances. But the first two that they mention are part of comparative juror analysis. And then to follow up, what is the best case if you're looking at Ninth Circuit cases? No, I'm looking under the EFPA standard cases from the United States Supreme Court because that's where we're supposed to look. Batson and Miller v. Cockrell. But again, this Court has said repeatedly that Ninth Circuit authority is persuasive authority in deciding what law is clearly established by the U.S. Supreme Court. And I would look there to Turner v. Marshall, which was decided by this Court I think a few months before Mr. Boyd's trial. Cockrell case was decided after the appellate decision in this case. I'm sorry? I said the Cockrell case was decided after the appellate court. That's correct. That's correct. But I think it's also illustrative or illuminating of the fact that this is how the United States Supreme Court sees Batson, which is involving comparative juror analysis. I don't think it's ever changed. This is just more evidence that this is what it's been all along. Mr. Pruden says that there's no comparative juror analysis done at the trial court level, but that we don't know because we don't have the record in this case. Well, I'm going to ask you the same question. Whose burden is it and how hard would it be for the trial lawyer or the client to say, we did more of the same later on when we were talking to Juror Smith, so we need the rest of the material for that reason? Again, we're in the practical situation where the trial lawyer is one lawyer. The appointed lawyer on appeal is a different lawyer. And yet I'm a third lawyer here. But I know that when you come into a case, you're appointed for an indigent defendant, the first thing you have to do is order the record and decide what portions of the record you want. And at that stage, if you're not the trial lawyer, it may be impossible. It certainly puts them in a difficult, if not impossible, position to say, okay, I know that Batson is an issue here. We know that because of the first juror that we're talking about. I'd want to make a comparative juror analysis. We don't even know, though, if any of the other African-Americans ended up on the jury. And surely the client who was there knows the answer to that and could have you make it sound as if there's no possibility to have made a more focused request. And I guess I'm having a hard time seeing why it is so helpless and hopeless to be more focused if there was indeed more there. Again, all I can say is that I, even after I came into this case, at the habeas, Federal habeas level, the first thing I did was ask for the rest of that transcript from the district court. It seems obvious that this is what you need if you're going to do comparative juror analysis. The answer to your question, unfortunately, about what happened to the other jurors is something that none of the appellate lawyers or habeas lawyers in this case knows because we were denied access to the record. I understand your position. Your time has expired. Thank you very much. We appreciate the arguments from both counsel, and the case just argued is submitted. We will take a very short break before hearing the remainder of the morning calendar. Thank both counsel. Thank you. Thank you.
judges: Cudahy, Graber, Fisher